**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2121
_____

HILTON KARRIEM MINCY,
                                    Appellant

v.

WARDEN DEPARLOS; DEPUTY WARDEN BLANK; LIEUTENANT HARTLY;
LYCOMING COUNTY PRISON; LYCOMING COUNTY PRISON BOARD;
SERGEANT MCKISSICK; JUDGE NANCY BUTTS; SHERIFF CHARLES T.
BREWER; COMMISSIONER REBECCA BURKE; COMMISSIONER RICHARD
NASSBERG; COMMISSIONER ERNEST LARSON; CONTROLLER KRISTA
ROGERS; MICHAEL DINGES, LYCOMING COUNTY DISTRICT ATTORNEY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:08-cv-00507)
District Judge: Honorable Christopher C. Conner
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 4, 2012
Before:  RENDELL, FUENTES and WEIS, Circuit Judges
(Opinion filed: September 21, 2012)
_____

OPINION
_____

PER CURIAM.

Hilton Karriem Mincy appeals from the summary judgment entered by the District Court in favor of the defendants. We will affirm.

## I.

Mincy commenced this civil rights action pursuant to 42 U.S.C. § 1983 on March 20, 2008, alleging (1) a failure to accommodate his religious beliefs; (2) retaliation for exercising his religious beliefs; (3) a violation of the Equal Protection Clause of the Fourteenth Amendment; (4) a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1; and (5) various state law claims. Mincy is a state inmate whose claims arise from his temporary housing at the Lycoming County Prison, located in Williamsport, Pennsylvania. He was housed at the prison on four occasions, from September 21, 2007, until October 8, 2007; from March 19, 2008, until April 11, 2008; from June 10, 2008, until June 17, 2009; and from August 6, 2008, until August 18, 2008. The defendants include the Lycoming County Prison, the Lycoming County Prison Board and its members,[1] Warden Deparlos, Deputy Warden Blank, Lieutenant Hartley, and Sergeant McKissick.

Mincy is a practicing member of the Muslim faith. Mincy alleged that the defendants interfered with his observance of the Muslim holiday of Ramadan in 2007. According to Mincy, the defendants did not provide him with hot meals at the end of his daily fast; provided morning and evening meals with insufficient caloric content to

---

[1] The board members are: Judge Nancy Butts, Sheriff Charles T. Brewer, Commissioner Rebecca Burke, Commissioner Richard Nassberg, Commissioner Ernest Larson, Controller Krista Rogers, and Lycoming County District Attorney Michael Dinges.

compensate for the absence of a daytime meal; refused to provide medication in accordance with his fasting obligations; refused to accommodate his seasonal obligation to make charitable donations;[2] and failed to provide a holiday feast at the end of the Ramadan season.

Food Service Supervisor Robert Pulizzi was responsible for food preparation, handling, and storage. Pulizzi submitted proposed menus to Susan Browning, a registered dietitian not employed by the prison, for approval based on their caloric composition and nutritional balance. Regarding the timing of meals for those fasting during Ramadan, Pulizzi received guidance from prison administration as counseled by Imam Abdul Pathan, a local Muslim leader who consulted with the prison administration regarding Muslim customs and led Friday religious services at the prison.

For those inmates fasting, Pulizzi provided fifty percent larger meal portions for the morning and evening meals in order to compensate for the absence of a daytime meal. Thus, despite the absence of a daytime meal, fasting inmates still received between 1,800 and 2,000 calories per day. Pulizzi believed that food prepared for the evening meal was kept sufficiently warm to insure that those fasting would receive a proper evening meal. Nevertheless, at some time following the 2007 Ramadan season, the prison upgraded from Styrofoam storage containers to Cambro insulated food storage containers.

---

[2] The act of making charitable donations is known as "Zakat." It is encouraged by the Muslim faith, particularly during Ramadan.

Upon his arrival at Lycoming County Prison in September 2007, Mincy was screened by medical personnel. Mincy informed the medical personnel that he suffered from seasonal allergies. Mincy indicated that he was prescribed medication while housed at the state correctional facility but chose to purchase over-the-counter (OTC) medication from the commissary in order to avoid waiting in the medication line. Mincy was told by medical personnel that prescription medication was distributed at certain times and that this schedule would not be altered. However, Mincy was not prescribed medication in September 2007.

Per the official inmate handbook, inmates at Lycoming County Prison are permitted to purchase certain OTC medications, including medication for congestion, and self-medicate. Those inmates deemed indigent may purchase OTC medication despite the unavailability of funds in their prison account. Debt to the prison is maintained and repaid as funds are deposited into an inmate's account.

Per the official inmate handbook, inmates are not generally permitted to release funds to other persons. This policy reduces prison administrative costs and prevents inmates from sending money to former inmates to compensate them for acts while incarcerated. Inmates are permitted to pay prison costs or post bail using money from their account. Otherwise, the only exception to the policy is that inmates may once send a limited amount of money home to the inmate's family, subject to approval by the deputy warden. Upon arrival at Lycoming, Mincy was indigent. Therefore, notwithstanding the

4

prison policy regarding release of funds, Mincy would not have been able to make a charitable donation.

Mincy also alleged that the defendants denied him access to Friday religious services on March 21, 2008. Attendance at religious services is dependent upon the security and operational needs of the prison. Lycoming County Prison policy requires that inmates request to attend religious services a week in advance. Chaplain Andy France coordinates attendance at all religious services.

Mincy arrived at the prison on Wednesday, March 19, 2008, and was held in administrative lock down until Thursday, March 20, 2008. Though he was previously registered with the prison as a practicing Muslim, because he did not sent a timely request to Chaplain France, he was not permitted to attend. Mincy was permitted to attend religious services on March 26, 2008, and March 28, 2008. According to Mincy, the defendants do not enforce the official policy against those attending Christian services. Rather, according to Mincy, Christian inmates need only sign a sheet of paper posted in the cell block at any time prior to their Sunday services. Thus, Mincy claimed that had the defendants permitted Muslim inmates to sign up for religious services in the same manner as Christian inmates, he would not have been denied access to services on March 21, 2008.[3]

_____

[3] Mincy's amended complaint contained other allegations as well. For example, Mincy made a series of allegations in support of his retaliation claim. However, Mincy did not address his claim for retaliation in his motion for summary judgment or in his briefs to this Court. Accordingly, we conclude that Mincy has abandoned the claim. Mincy also

Following discovery, the parties filed cross-motions for summary judgment. The District Court granted summary judgment to the defendants. Mincy timely appealed.[4]

## II.

We exercise plenary review of the District Court's grant of the defendants' motion for summary judgment. DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006); Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## III.

alleged, in more general terms, disparate treatment of Muslim inmates incarcerated at Lycoming County Prison. According to Mincy, the defendants encourage the observance and celebration of Christian holidays, but discourage the observance of Muslim holidays. Mincy claims the defendants refused to provide the same access to Qurans as to Bibles. Mincy adduced no evidence to demonstrate that his rights were infringed as a result of these allegations. Rather, it appears that Mincy brings these claims on behalf of all Muslim inmates incarcerated at Lycoming County Prison. This he may not do, as it is well settled that pro se inmates are not permitted to represent a class of litigants. Hagan v. Rogers, 570 F.3d 146, 159 (3d Cir. 2009) (citing Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975)); Fymbo v. State Farm Fire & Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000); 28 U.S.C. § 1654.

[4] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

A.

In the first five issues briefed to this Court, Mincy argues that the District Court abused its discretion by repeatedly failing to adhere to its local rules of procedure. We have reviewed the record and conclude that Mincy's arguments are without merit. The record clearly documents both the contentious nature of the discovery period and the District Court's generous efforts to accommodate both sides in this matter, liberally granting requests for extensions when possible, but imposing strict filing deadlines when necessary to ensure that the case proceeded to an evaluation of the substantive merits of Mincy's claims. Any violation of local rules was minor and no party incurred prejudice. United States v. Rivas, 493 F.3d 131, 141 (3d Cir. 2007) (citing Prof'l Programs Grp. v. Dep't of Commerce, 29 F.3d 1349, 1353 (9th Cir. 1994) (holding that a violation of local rules can be excused where it is "so slight and unimportant that the sensible treatment is to overlook it")).

In his sixth and seventh issues, Mincy suggests that the District Court applied an incorrect standard of review in deciding the cross-motions for summary judgment. We disagree. We have examined the record and the analysis of the District Court and discern no error in this regard.

B.

In his eighth issue, Mincy challenges the substantive analysis of the District Court. Mincy also reiterates his previous arguments in further detail. In its effort to provide a comprehensive analysis of Mincy's claims, the District Court properly examined the

7

evidence pursuant to constitutional principles and established precedent. In our view, the District Court relied on several appropriate grounds, but as we may affirm on any grounds supported by the record, see Hughes v. Long, 242 F.3d 121, 122 n.1 (3d Cir. 2001), we will limit our discussion to the following.[5]

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983. "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). A plaintiff must allege "personal direction" or "actual knowledge and acquiescence."

---

[5] The District Court appropriately concluded that the Lycoming County Prison is not a person within the meaning of Section 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973). The court found that the Lycoming County Prison Board and its members were persons, see Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978), but the evidence of record indicated that they had delegated all administrative and policy-making authority to the prison administrators, which included Warden Deparlos, Deputy Warden Blank, and Deputy Warden Mahoney. Accordingly, the court determined that the board and its members could not be found liable. The court also declined to exercise jurisdiction over Mincy's state law claims and dismissed them without prejudice. Mincy does not challenge these rulings on appeal.

8

Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (quoting Rode, 845 F.2d at 1207).

Where an inmate challenges a prison regulation on the ground that it violates his constitutional rights, we will conclude that "the regulation is valid if it is reasonably related to legitimate penological interests." DeHart v. Horn, 390 F.3d 262, 268 (3d Cir. 2004) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).[6] Nevertheless, this Court maintains "a longstanding practice of avoiding constitutional questions in cases where we can reach a decision upon other grounds." Egolf v. Witmer, 526 F.3d 104, 109 (3d Cir. 2008) (citing United States v. Otero, 502 F.3d 331, 334 n.1 (3d Cir. 2007)).

Regarding Mincy's allegation that the defendants failed to accommodate his religious beliefs by providing him inadequate food service during Ramadan in 2007, we conclude that a constitutional analysis is unnecessary. Egolf, 526 F.3d at 109. Mincy identified no official policy promulgated by the prison administration which violated his constitutional rights. Moreover, the record is clear that Supervisor Robert Pulizzi was

---

[6] This Court will rely on a four-factor test to determine whether a regulation is reasonably related to a legitimate penological interest. We will consider:

> (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist.

DeHart, 390 F.3d at 268 (quoting Waterman v. Farmer, 183 F.3d 208, 213 n.6 (3d Cir. 1999) (explaining the Turner analysis)).

9

solely responsible for food service preparation, handling, and storage. Pulizzi is not a defendant in this case. There is no evidence to suggest that any named defendant played a direct role or had any personal involvement in the preparation or storage of food. Accordingly, the defendants may not be held liable. Evancho, 423 F.3d at 353.

To the extent Mincy claims that the prison administrators failed to properly address his complaints regarding the size or temperature of meals, we conclude that their administrative role does not establish personal involvement in the alleged underlying wrongdoing, absent evidence that they engaged in retaliation. See, e.g., Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). There is no such evidence here.[7]

Mincy's allegation that the defendants refused to provide medication in accordance with his fasting obligations also requires no constitutional analysis. Egolf, 526 F.3d at 109. As with Mincy's food-related allegations, there is no evidence that the named defendants had any personal involvement in the distribution or the refusal to distribute medicine. Evancho, 423 F.3d at 353. Further, there is simply no evidence to support his allegation that he was denied appropriate access to medication. Mincy was not prescribed any medication for his allergies in September 2007. Therefore, regardless of whether the medical staff refused to alter its standard distribution schedule in order to accommodate those fasting for Ramadan, Mincy suffered no harm at their hands.

---

[7] We note further that Mincy's claim that the defendants interfered with his observance of Ramadan in 2007 by refusing to provide a celebratory feast at the end of Ramadan is without merit. Mincy was not incarcerated at Lycoming County Prison at the end of Ramadan in 2007.

10

Further, the official prison policy permits inmates to purchase OTC medicine and self-medicate. If Mincy required medicine to treat his seasonal allergies, he could have purchased OTC medicine from the commissary and taken this medicine in a manner that comported with his fasting obligations. Moreover, his documented indigence upon arrival at Lycoming County Prison in September 2007 would not have hindered his access to OTC medicine, as the official prison policy permitted indigent inmates to purchase medicine despite an inability to pay.[8]

In his equal protection claim, Mincy alleged that the defendants favored Christian inmates' attendance at religious services. To prevail on an equal protection claim, a plaintiff must present evidence that he has been treated differently from persons who are similarly situated. Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).

Mincy acknowledges that the official prison policy contemplates no disparate treatment. However, Mincy argues that in practice, this policy is not followed and claims there is evidence of record suggesting unequal treatment. We have found no such evidence. In response to an unspecified request for production of documents, the defendants responded, "There exists no form [sic] sign-up sheet. Instead, a piece of tablet

---

[8] Mincy's documented indigence in September 2007 also undermines his claim that the defendants interfered with his First Amendment rights by refusing to permit him to make charitable donations.

11

paper is normally posted in the block for weekly sign-up for Church Services."[9] Despite Mincy's efforts to suggest otherwise, this is not evidence sufficient to establish a genuine issue of fact. Kaucher, 455 F.3d at 423.

Further, we again conclude that Mincy has failed to indentify an appropriate defendant against whom to pursue this claim. The record established that the prison chaplain was responsible for implementing prison policy and for coordinating inmate attendance at religious services, but Chaplain France is not named as a defendant. Conversely, there is no evidence that the named defendants had any personal involvement in the alleged disparate treatment. Evancho, 423 F.3d at 353.

Finally, Mincy challenges the District Court's conclusion that the defendants did not a impose a substantial burden on Mincy's religious expression in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005). In support of his assertion, Mincy directs the Court's attention to the defendants' alleged refusal to provide an alternative time for him to take medication. Mincy argues that this demonstrates that the defendants forced him "to choose between following the precepts of his religion and forfeiting the benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit." Washington v. Klem, 497 F.3d 272, 280 (3d

---

[9] Mincy does not specify what document he was seeking. Thus, it is impossible to place the defendants' response in any context. Any attempt by this Court to do so would be mere speculation.

12

Cir. 2007). We disagree. As discussed previously, the defendants did not limit Mincy's access to medication. Accordingly, the record does not support Mincy's argument.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.